# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| STEVEN POLING, | * |
| PLAINTIFF, | * |
| v. | *     Case No.: PWG-18-80 |
| WARDEN RICKY FOXWELL, *et al.*, | * |
| DEFENDANTS. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

For more than eight months, Plaintiff Steven Poling has been without his prescription for Lyrica, which Defendants permitted to expire, despite an Order of the Court not to cease providing Lyrica to Plaintiff without notifying the Court and affording Plaintiff the opportunity to respond. Now pending is Plaintiff's Motion for a Show Cause Order, ECF No. 63, asking the Court to find Defendants in violation of the Court's Order. Because Defendants, in their Response to the Show Cause Order I issued, ECF No. 70, failed to justify the cessation of Plaintiff's receipt of Lyrica, providing only the strained argument that they could not ensure that their medical provider provided adequate care, Plaintiff's Motion is granted.

## Background

On July 26, 2018, following Plaintiff Steven Poling's Motion for Emergency Injunction, ECF No. 20, in which he alleged that he was no longer receiving his prescription medications for pain and "nerves," and, as a result, was suffering "intolerable" pain and an inability to "function through his daily activities," I ordered that, to the extent Plaintiff currently is receiving Lyrica, the

facility may not stop providing Lyrica to Plaintiff without advance notice to the Court, and without providing Plaintiff an opportunity to respond. ECF No. 29. During the months that followed, I appointed counsel to represent Plaintiff, ECF No. 35, and Plaintiff complained repeatedly that he still was not receiving Lyrica, *e.g.*, Line, ECF No. 43 (Defense counsel's October 19, 2018 report that the prescription had expired and not been renewed); Pl.'s Oct. 25, 2018 Status Report, ECF No. 44 (asserting that, as of October 20, 2018, he was not receiving Lyrica and asking Court to enforce previous order); Jt. Status Report, ECF No. 48 (stating that Plaintiff still not receiving Lyrica, despite Plaintiff claiming that "his pain levels have doubled, and that his pain is causing him to wake up every thirty minutes at night"); Pl.'s Dec. 6, 2018 Mot., ECF No. 52 (asserting that his lack of "pain and nerve medications" is rendering him "unable [to] focus or concentrate"); Dec. 10, 2018 Status Report, ECF No. 54 (reporting that Plaintiff "continues to experience significant pain and debility due to the discontinuation of his Lyrica treatment," even though he now has been on Cymbalta for three weeks); Dec. 28, 2018 Status Report, ECF No. 57 (Plaintiff reported "excruciating pain" while Defendants reported that "Fioricet, a new addition to Plaintiff's pain management regimen, appears to help with the pain"). Meanwhile, Plaintiff's counsel worked with Defense counsel in an effort to resolve the issue. *See* Sept. 5, 2018 Status Report, ECF No. 39; Nov. 9, 2018 Status Report, ECF No. 50; Dec. 10, 2018 Status Report; Dec. 28, 2018 Status Report.

I held a status conference on January 4, 2019, after which I noted that "Plaintiff's appointed counsel's role is expanded so that counsel may represent Plaintiff on medical issues, to include bringing a new cause of action based on the medical care Plaintiff has (or has not) received," and "Plaintiff's counsel is authorized to bring in non-parties as defendants insofar as counsel may believe that such parties are necessary in order to obtain full relief." Jan. 9, 2019 Ltr. Order, ECF

No. 59. Additionally, I ordered the parties to continue to "work on an expedited and cooperative basis to see if the new medical provider can address Poling's need for, and receipt of Lyrica immediately," and I stated that "[t]his cooperative work shall be without prejudice to Plaintiff filing a show cause motion if necessary." *Id.*

A month passed, and Defendants did not resume providing Lyrica to Plaintiff. Pl.'s Mot. On February 4, 2018, he filed the pending Motion for Order to Show Cause, alleging that "[s]ince October 19, prison officials have refused to provide Lyrica to Plaintiff," even though Plaintiff has cooperated with their requirement that he "attend[] a neurological services referral from November 11-13." *Id.* He asked the Court to "require Defendants to show cause as to why the Court should not hold them in violation of the Court's July 26, 2018 Order." *Id.* I issued a Show Cause Order, ECF No. 65, directing Defendants show cause why the relief Plaintiff requested should not be granted.

In their Response, Defendants insist that "[t]he gravamen of Plaintiff's issue involves the treatment modality of the medical providers not a denial of access to medical treatment." Resp. 1. They contend that, because the Defendants, who are the Warden and correctional officers at the prison where Plaintiff is incarcerated, cannot practice medicine, it was not they who denied Plaintiff access to treatment and, because the medical providers were not named as Defendants, the Court cannot order them to provide certain medications. *Id.* at 1–2; *see* Gelsinger Decl., ECF No. 70-1. Further, they insist that Plaintiff cannot state a claim against them based on his medical treatment. Defs.' Resp. 2. Defendants also argue that injunctive relief is premature because "Plaintiff was recently evaluated by University of Maryland Medical Systems ('UMMS') neurologists who proscribed [sic] a course of action involving radiation," and in the interim,

3

Plaintiff "is receiving Tylenol 3, Percoset and Fioricet to help with his headaches." *Id.*; *see* Med. Recs., ECF No. 70-2.

Plaintiff counters that "Defendants are ultimately responsible for the well-being of inmates under the State's care" and, "because Defendants have provided no justifiable excuse for violating the Court's July 26, 2018 Order, the Court should grant Mr. Poling's request for injunctive relief and compel Defendants to ensure that Mr. Poling's Lyrica treatment is resumed." Pl.'s Reply, ECF No. 72.

### **Reach of Injunctive Relief**

Pursuant to Rule 65(d)(2), an order for injunctive relief binds not only the parties and their agents and employees but also "other persons who are in active concert" with the parties, their agents, or their employees. Fed. R. Civ. P. 65(d)(2). "In essence it is that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they are not parties to the proceeding." *Little v. Associated Tech. Training Servs., Inc.*, 12 F.3d 205 (4th Cir. 1993) (citing *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945)). The reach of the Court's injunction order is limited, however; the third party "must either abet the defendant, or must be legally identified with him." *Id.* (quoting *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832-33 (2d Cir. 1930)). Thus, "[a]ction as an alter ego, or in collusion, is required to find concert or participation under [R]ule 65(d)." *Seasons Pizza Franchisor, Inc. v. 4 Seasons Pizza & Subs, Inc.*, No. WDQ-15-739, 2015 WL 9304539, at *3 (D. Md. Dec. 21, 2015) (citing *Thaxton v. Vaughan*, 321 F.2d 474, 478 (4th Cir. 1963)). Moreover, as with any preliminary injunction, "[t]he court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1).

Here, the previous and current medical providers, Wexford and Corizon, work with Defendants to provide medical services to incarcerated individuals. But, they did not receive

notice of the July 26, 2018 Order before it issued. Nor has Plaintiff shown that they received notice of his pending request for injunctive relief. Therefore, the medical providers cannot be enjoined at this time. Nonetheless, Defendants themselves must adhere to the Order, as "prisoners are entitled to reasonable medical care, and . . . officers having custody of a prisoner have a duty to procure such care." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (citing *Blanks v. Cunningham*, 409 F.2d 220 (4th Cir. 1969); *Edwards v. Duncan*, 355 F.2d 993 (4th Cir. 1966)); *see also Harrison v. Oakley*, No. RDB-07-2468, 2008 WL 7836410, at *7 (D. Md. June 25, 2008) ("State facilities are required to provide prisoners with reasonable medical care . . . .").

**Violation of July 26, 2018 Order**

Defendants vehemently deny that they are in violation of the July 26, 2018 Order requiring them to notify the Court and to provide Plaintiff with the opportunity to respond before discontinuing Plaintiff's receipt of Lyrica. It is true that they informed the Court on October 19, 2018 that Plaintiff's Lyrica prescription would not be renewed, one day before the date of which Plaintiff claimed that he stopped receiving Lyrica. But that was not sufficient time for Plaintiff to respond; the discontinuation went into effect and Plaintiff's later complaints have not been sufficient for Defendants (through the medical providers) to renew the Lyrica prescription. Certainly, in the months that have passed, Defendants have prescribed other medications and begun other treatment. Yet, none of those efforts negate the fact that Defendants violated the July 26, 2018 Order by discontinuing Lyrica without affording Plaintiff any meaningful opportunity to respond.

**Injunctive Relief**

Rule 65 provides for preliminary injunctive relief. Fed. R. Civ. P. 65(a). The purpose of a preliminary injunction is to "protect the status quo and to prevent irreparable harm during the

pendency of a lawsuit, ultimately to preserve the court's ability to render a meaningful judgment on the merits." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003). As a preliminary injunction is "an extraordinary remedy . . . [it] may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)

To obtain a preliminary injunction or a TRO, the plaintiff must "establish that [1] he is likely to succeed on the merits, [2] he is likely to suffer irreparable harm in the absence of preliminary relief, [3] the balance of equities tips in his favor, and [4] an injunction is in the public interest." *Id.* at 20; *see Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011). In the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994).

The claims in Poling's underlying Complaint, namely, that he was improperly removed from his prison job assignment and improperly flagged as a member of a security threat group, have been dismissed. *See* Order, ECF No. 64. Denial of his medication was not an issue at the time he filed suit, but, notably, in the attachments to his original Complaint, Plaintiff included an Affidavit in which he asserted that he "*absolutely cannot function without [his] pain and nerve medications, which is controlled by the medical provider and the D.O.C. both.*" ECF No. 1-2, at 1. (emphasis in Aff.). He stated that he has "severe, permanent neurological injury and damage," the result of which is that he has "difficulty sleeping when [his] neck and spine are not in alignment," he experiences "numbness on [his] left side and bad muscle spasms in and around [his] neck," he has trouble concentrating, difficulty swallowing, and "[s]ignificant muscle-atrophy [sic]." *Id.* Further, Plaintiff's counsel has broached the possibility of bringing new claims, perhaps

as separate litigation, based on the ongoing pain Plaintiff has alleged in his motions for injunctive relief and his status reports. *See* Jan. 9, 2019 Ltr. Order.

Plaintiff's *pro se* pleadings must be liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and on motion and just terms, Rule 15(d) permits supplementation of complaints to describe "any transaction, occurrence, or event that happened after the date of the pleading to be supplemented," Fed. R. Civ. P. 15(d). Indeed, "[t]he court may permit supplementation even though the original pleading is defective in stating a claim . . . ." *Id.* Under these circumstances, for purposes of Plaintiff's pending motion and with the understanding that counsel will seek leave to file an amended complaint to bring an appropriate claim against the proper defendants, I construe Plaintiff's Complaint to include a claim for deliberate indifference in violation of the Eighth Amendment.

When a prison's medical providers are deliberately indifferent to a prisoner's serious medical needs, or "prison guards . . . intentionally deny[] or delay[] access to medical care or intentionally interfer[e] with the treatment once prescribed," that deliberate indifference "constitutes the wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Jones v. Bishop*, No. CCB-16-2893, 2018 WL 1521874, at *7 (D. Md. Mar. 28, 2018) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).

> To establish an Eighth Amendment claim [based on deliberate indifference to a serious medical need] a plaintiff must prove: "(1) that the deprivation of a basic human need was *objectively* sufficiently serious; and (2) that *subjectively* the officials acted with a sufficiently culpable state of mind." *De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013) (emphasis in original). The court must "consider prison officials' culpable mental state because 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment' " *King v. U.S.,* 536 Fed. Appx. 358, 360 (4th Cir. 2013) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

7

*Id.*

Along with his Reply, Plaintiff filed his medical records, and a declaration from his medical expert, Richard Brouillette, D.O., which not only demonstrates Plaintiff's need for Lyrica on an ongoing basis but also is evidence that would support a claim for deliberate indifference. Brouillette Decl., ECF No. 72-2, at 1; Med. Recs., ECF No. 72-2, at 7–11, 15–20, 26–28, 37–43; Med. Recs., ECF Nos. 72-3, 72-4. Plaintiff persuasively summarized the evidence in support of his Eighth Amendment claim as follows:

> [A]s explained by Plaintiff's medical expert, Richard J. Brouillette, D.O., in the attached declaration, Mr. Poling has made an eminently reasonable request for medical treatment: to continue a medication regimen that has worked for several years to ease the pain caused by his enlarging brain tumor. Declaration, at ¶ 9 (Ex. 2).
>
> Before his transfer to the Maryland Correctional Training Center ("MCTC"), Mr. Poling was able to manage his severe pain through treatment with Lyrica, despite his growing brain tumor. At his former institution, his physician noted that "his pain is controlled on his current dose of meds. [T]he Lyrica works well for him . . . . [H]e [is] not asking for more meds[,] just to continue what he is on currently." Mar. 7, 2018 Health Services Visit (Ex. 3). In addition, months before he was transferred to MCTC, Mr. Poling notarized an affidavit concerning "Major Life Activity Impairments," in which he stated that he "absolutely cannot function" through daily activities without "nerve and pain medications, Lyrica and Tramadol." Doc. No. 24, at 3. Nevertheless, after his arrival at MCTC, Mr. Poling's pain medications were discontinued with no explanation. Doc. No. 20, at 2 (illustrating that Mr. Poling has no understanding of why treatment was discontinued).
>
> The medical records show that, without Lyrica, Mr. Poling has experienced severe and unnecessary pain. Immediately after his medications were discontinued, Mr. Poling reported that his level of pain was "intolerable" and that he did "not believe an animal would be treated the way that I am being treated here . . . at MCTC." Doc. No. 20, at 2. For months, Mr. Poling has continued to reiterate his critical need for the reinstatement of his prescription for Lyrica. Indeed, as recently as February 18, 2019, Mr. Poling rated his pain as an eight out of ten. Feb. 18, 2019 Health Services Visit (Ex. 4). Still, Defendants have refused to resume Mr. Poling's Lyrica treatment and have provided no medical rationale to justify their approach.
>
> As further attested to by Dr. Brouillette, in light of Mr. Poling's brain tumor, there should be no question regarding the levels of pain that Mr. Poling reported that he was feeling. Declaration, at ¶ 8 (Ex. 2). In Dr. Brouillette's opinion, "it is a breach of the medical standard of care to withhold a pain medication from a patient

> when that pain medication has worked well in the past and replacement treatments have not been as effective in treating the patient's pain." *Id*. at ¶ 11. Moreover, it appears that treatment might have been denied because Mr. Poling would not agree to attend a particular medical procedure. Oct. 9, 2018 Release of Responsibility (Ex. 1). Dr. Brouillette further concludes that "it would be a breach of the medical standard of care to withhold an otherwise indicated pain medication because the patient refuses to attend a medical procedure." Declaration, at ¶ 11.
>
> In sum, Mr. Poling had a need for medical treatment that was denied without medical justification, and without the notice and opportunity to respond required under the Court's Order. Defendants have thus violated the Court's July 26, 2018 Order without excuse, causing Mr. Poling intolerable and unnecessary pain. Defendants' conduct therefore amounts to deliberate indifference to serious medical needs and a breach of the State's obligations under the Eighth Amendment to the U.S. Constitution. The Court should hold Defendants in violation of the Court's July 26, 2018 Order, grant Mr. Poling's request for injunctive relief, and compel Defendants to ensure that Mr. Poling's Lyrica treatment is resumed.

Pl.'s Reply 6–8 (footnotes omitted). While inmates are not entitled to a particular course of treatment or medication of their choosing, *see Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014), Plaintiff has established his medical need for Lyrica as the one medication that has been effective in managing his pain. *See* Pl.'s Reply 6–8. On the record before me, Plaintiff is likely to prevail on the merits of a claim of deliberate indifference based on the discontinuation of Lyrica.

Further, irreparable harm is likely, as the pain Plaintiff allegedly has suffered cannot be undone. *See generally Jones*, 2018 WL 1521874, at *16 (noting that "the potential for irreparable harm to [inmate's] mental and physical health from being denied [psychotropic] medications could be very high"). Indeed, these are the "exceptional and compelling circumstances" that justify injunctive relief in the prison context, *see Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994). and tip the balance of equities in Plaintiff's favor, *cf. Enow v. Baucon*, Nos. PWG-16-4042, PWG-17-850, PWG-17-2312, 2018 WL 925422, at *15 (D. Md. Feb. 16, 2018) (noting that "Enow present[ed] no exceptional or compelling circumstances to conclude the balance of equities tips in his favor"). And, "it is certainly in the public interest that incarcerated individuals receive necessary medical care," given that "deliberate indifference to serious medical needs of prisoners

constitutes the wanton infliction of pain" in violation of the Eighth Amendment. *Jones*, 2018 WL 1521874, at *16 (quoting *Estelle*, 429 U.S. at 104). Therefore, Plaintiff has succeeded in establishing that the existing Defendants have failed to comply with the Court's Order, and that some form of appropriate relief is warranted. However, determining the exact nature of that relief on the record before me is problematic, especially since there are no properly pleaded claims in the existing Complaint that address the Plaintiff's deliberate indifference claims. Since a preliminary injunction must be tied to the likelihood of success on the merits of a properly pleaded complaint, the failure to file an amended complaint which included all the proper defendants stands in the way of the Court ordering effective relief.

Accordingly, it is this 3rd day of April, 2019, by the United States District Court for the District of Maryland, hereby ORDERED that:

1. Plaintiff's Motion for Order to Show Cause, ECF No. 63, IS GRANTED;

2. Defendants ARE FOUND to be in violation of this Court's July 26, 2018 Order;

3. Counsel for the Plaintiff will advise the court not later than April 14, 2019 whether, and if so when, they intend to file an amended complaint against the existing Defendants asserting a deliberate indifference claim, and whether they intend to add as additional defendants Wexford and or Corizon;

4. In the meantime, by April 22, 2019, the existing Defendants are ORDERED to provide the Court with a status report setting forth the treatment that the Plaintiff is receiving for control of his pain, which addresses the opinions stated in Dr. Brouillette's declaration that Plaintiff should still be receiving Lyrica, as that is the only medication that will effectively control his pain. The status report must be accompanied by the sworn

declaration of a qualified medical professional that addresses specifically the points raised in Dr. Brouillette's declaration.

_____/S/_____
Paul W. Grimm
United States District Judge

lyb