IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| **STEVEN POLING,** | * | |
| *Plaintiff,* | * | |
| v. | * | Case No.: 18-cv-0080-PWG |
| **WARDEN RICKY FOXWELL,** *et al.* | * | |
| *Defendants.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

In this civil rights suit, Plaintiff Steven Poling alleges that while he was incarcerated in various Maryland Division of Corrections facilities serving a sentence, Defendant Wardens Frank Bishop, Richard Dovey, Walter West, and former Warden Ricky Foxwell; Wexford Health Sources, Inc.; Corizon Health, Inc.; Corizon, LLC; Dr. Sharon Baucom; Dr. Erwin Aldana; Dr. Contah Nimley; and Holly Pierce, CRNP[1] enacted and followed a policy designed to preclude him from continuing to receive previously prescribed medication that successfully reduced his severe nerve pain. Mr. Poling's pain resulted from neurological injuries sustained after surgery to remove

---

[1] As the caption in the complaint states, Dr. Baucom is sued in her individual and official capacities. The complaint does not specify in which capacity the other defendants are sued. Compl. 1. To avoid any issues of Eleventh Amendment immunity, this suit may only proceed against the Defendants in their individual capacities. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State not its officials acting in their official capacities are 'persons' under § 1983."); *see also Virginia Office for Protection and Advocacy v. Reinhard*, 405 F.3d 185, 189 (4th Cir. 2005). Accordingly, the motion to dismiss will be GRANTED as to any allegations that proceed against Defendants in their official capacities.

a brain tumor. Second Am. Compl. ¶ 86–89, ECF No. 159-1 ("Compl."). Mr. Poling seeks relief for this inaction through a 42 U.S.C. § 1983 suit alleging deprivation of necessary and adequate medical care under the Eighth and Fourteenth Amendments;[2] he seeks compensatory damages for physical and psychological injuries, and pain and suffering; punitive damages; and injunctive relief ensuring adequate treatment for his pain. Compl. 30–32. Defendants[3] have moved to dismiss or, alternatively, for summary judgement. Defs.' Mot. Mem., ECF No. 163. The arguments have been briefed, ECF Nos. 163, 170, and a hearing is not necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, including that Mr. Poling has shown he needs additional discovery to oppose a motion for summary judgment, Defendants' motion will be treated only as a motion to dismiss, and denied.

## Factual Background[4]

In March of 2012, Mr. Poling underwent surgery to remove a large brain tumor. The tumor could only partially be removed, and it was foreseeable that it would again continue to grow,

---

[2] While Mr. Poling's complaint cites both the Eighth and Fourteenth Amendments, the Court notes that the Eighth Amendment applies to individuals such as Mr. Poling who are serving a sentence. *See Haskins v. Hawk*, No. ELH-11-2000, 2013 WL 1314194, at *25 (D. Md. Mar. 29, 2013). The Fourteenth Amendment is relevant here only as the vehicle through which the Eighth Amendment protections are incorporated against the state. *Robinson v. California*, 370 U.S. 660 (1962).

[3] As Mr. Poling makes clear in his response to the motion to dismiss, the only remaining State defendants in this case are Warden Bishop, Warden Dovey, and Dr. Baucom, who jointly filed the motion to dismiss at ECF 163. Answers have previously been filed the Corizon Defendants (ECF No. 123), Dr. Clayton Raab (ECF No. 136), Wexford Health Services (ECF No. 137), Erwin Aldana (ECF No. 138), Dr. Contah Nimley (ECF No. 139), and Nurse Practitioner Holly Pierce (ECF No. 176).

[4] In deciding the motion to dismiss, I rely only on well-pleaded facts and documents integral to the complaint with undisputed authenticity, *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013), and I draw all reasonable inferences in favor of the plaintiff, *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012).

leading to the return of the seriously debilitating symptoms that necessitated the surgery in the first place. Unfortunately, the tumor did begin to grow, and Plaintiff, left with severe and permanent neurological injury from the first surgery, required pain medication. Compl. ¶¶ 3–5. In an effort to treat that pain, Mr. Poling first received a prescription for two pain medications—Lyrica and Tramadol—beginning in mid-2016. *Id.* ¶ 55. In March of 2018, during a visit with Dr. Raab at Eastern Correctional Institution ("ECI"), Dr. Raab noted that Mr. Poling responded well to Lyrica and renewed Mr. Poling's prescriptions for Lyrica and Tramadol. *Id.* ¶ 56.

Mr. Poling was transferred to the Maryland Correctional Training Center ("MCTC") in June of 2018, and then to the North Branch Correctional Institution ("NBCI") in March of 2019. *Id.* ¶ 4. At each of these facilities, he alleges, prison medical staff refused to provide him with effective medication to treat his pain. *Id.* At MCTC, Dr. Nimley decided not to renew Mr. Poling's prescriptions for Lyrica and Tramadol, despite evidence in his medical records that he responded well to them and his pleas that she not alter his course of treatment. *Id.* ¶¶ 58–59. Ceasing Lyrica and Tramadol resulted in Mr. Poling suffering migraine headaches, vomiting, dizziness, and pain sufficient to keep him awake at night, which Mr. Poling documented in a June 21, 2018 sick call slip. *Id.* ¶ 61. Mr. Poling was informed that he could not receive Lyrica and Tramadol at MCTC—despite a valid prescription for them from Dr. Raab—because of a policy against certain medications. *Id.* ¶ 63.

By July 2, 2018, correctional medical care providers had not resolved Mr. Poling's pain medication situation and he filed a motion for an emergency injunction with this Court. ECF No. 20. The Court subsequently appointed counsel for Mr. Poling; he then withdrew his motion for injunctive relief. ECF Nos. 29, 35, 40, 42. The Court ordered that Mr. Poling receive Lyrica and Tramadol, and, in granting the motion to withdraw the emergency motions, observed "that Plaintiff

currently is receiving his medication and has asked to withdraw his request for injunctive relief." Order dated Oct. 19, 2018, ECF No. 42.

That relief was not permanent, Mr. Poling alleges. By October 24, 2018, Mr. Poling was no longer receiving Lyrica; he was again informed, in November 2018, that a Department of Corrections policy, implemented by Wexford and/or the State,[5] prohibited him from receiving Lyrica and Tramadol. Compl. ¶¶ 69, 72. That month, he also met with Dr. Aldana; Dr. Aldana declined to prescribe Lyrica and did not offer a medical reason for the decision. *Id.* ¶ 70. Instead, Dr. Aldana prescribed Cymbalta, which Mr. Poling alleges was ineffective in treating his severe pain. *Id.* ¶ 71. In January 2019, Corizon replaced Wexford as the healthcare provider at MCTC, but Mr. Poling's difficulty receiving effective pain medication persisted. Mr. Poling alleges this course of conduct was consistent with a policy against prescribing Lyrica and Tramadol. *Id.* ¶ 74. Importantly, when Mr. Poling saw physicians at the University of Maryland Medical Center who were unaffiliated with Corizon, they prescribed Lyrica and Tramadol *Id.* ¶ 75.

Mr. Poling alleges that Dr. Nimley, Dr. Aldana, and Nurse Practitioner Holly Pierce all were fully aware of Mr. Poling's need for Lyrica and Tramadol, but refused to prescribe them. *Id.* ¶ 80. They did so in furtherance of the policy adopted by Wexford, Corizon, the Wardens, and Maryland's Correctional Services' Regional Medical Director and Chief Medical Officer. *Id.*

**Standard of Review**

Defendants style their dispositive motion as a motion to dismiss under Fed. R. Civ. P.

---

[5] Despite the fact that private companies (Wexford and Corizon) contracted with the State of Maryland Department of Corrections to provide medical care to incarcerated patients, and it was their policies that prevented the prescription of Lyrica and Tramadol to Mr. Poling, he alleges "prison wardens such as Mr. Dovey, regional medical directors such as Dr. Aldana, and the chief medical officer," Dr. Baucom, are responsible for either procuring or endorsing the policy that prevented Mr. Poling from receiving his medication. Compl. ¶ 72.

12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion of this type implicates the Court's discretion under Fed. R. Civ. P. 12(d). *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011). Generally, the Court may treat a motion to dismiss as a motion for summary judgment pursuant to Rule 12(d) if it gives "[a]ll parties . . . a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). But, if the party opposing a summary judgment motion "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . defer considering the motion or deny it." Fed. R. Civ. P. 56(d).

Here, counsel for Mr. Poling filed with his opposition a Rule 56(d) affidavit in which he identified facts essential to responding to the motion, if treated as one for summary judgment, that he has yet to obtain through discovery. Specifically, counsel for Mr. Poling has outstanding interrogatories and requests for document production that go to the core of the claims in this case. To adequately respond to the summary judgment motion, counsel requires discovery about the Division of Corrections policy cited in the complaint that prevented administration of Lyrica and or Tramadol to inmates. Pl.'s Rule 56(d) Aff. ¶ 5(a), ECF No. 170-3. Counsel also requires "documents related to communication of the Policy from Defendants to personnel responsible for implementing the Policy" (*Id.* ¶ 5(b)); "documents related to meetings concerning Plaintiff's treatment and care" (*Id.* ¶ 5(c)); "documents related to Defendants' standards or protocols for medical record-keeping, including documents related to the distribution of medicine and the roles and responsibilities of medical personnel" (*Id.* ¶ 5(d)), among other information. I agree that this discovery is appropriate in order for Mr. Poling to respond to a summary judgment motion. Therefore, I will consider Defendants' motion only as a motion to dismiss, and will limit my review to those facts appropriate for consideration at this procedural juncture. *See* Fed. R. Civ. P. 56(d).

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

When reviewing a motion to dismiss, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see also CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Moreover, where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir.

1991); *see also Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2–3 (D. Md. Apr. 12, 2011).

### Section 1983 claim

"[S]upervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir. 1994) (citing *Slakan v. Porter,* 737 F.2d 368 (4th Cir. 1984)). This liability, however, "is not premised on *respondeat superior* but upon 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Id.* at 798 (quoting *Slakan,* 737 F.2d at 372–73). Supervisory liability in a section 1983 claim "is determined 'by pinpointing the persons in the decision-making chain whose deliberate indifference permitted the constitutional abuses to continue unchecked.'" *Id.* at 798 (quoting *Slakan,* 737 F.2d at 376).

To establish supervisory liability against a warden or other supervisor under § 1983, Mr. Poling must show "(1) that the supervisor had actual or constructive knowledge that his [or her] subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw,* 13 F.3d at 799 (citations omitted). To demonstrate "a 'pervasive' and 'unreasonable' risk of harm," Mr. Poling must show that "the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." *Id.* Deliberate indifference carries a "heavy burden of proof." *Id.* A

plaintiff generally cannot establish deliberate indifference "by pointing to a single incident or isolated incidents." *Id.* (quoting *Slakan,* 737 F.2d at 372–73 (citations omitted)). Rather, he must show "[the] supervisor's continued inaction in the face of documented widespread abuses," which "provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates." *Id.* (quoting *Slakan,* 737 F.2d at 372–73 (citations omitted)).

Defendants argue Mr. Poling has set forth only "bald allegations" that the Defendant Wardens oversaw medical care at the facilities where he was incarcerated. Defs.' Mot. Mem. 10. As to supervisory liability, Defendants cite the standard set forth in *Shaw* and argue Mr. Poling has not pleaded facts sufficient to establish supervisory liability because the Defendants, according to the motion, do not have supervisory liability over the medical contractors involved in this case. *Id.* at 13. Moreover, Defendants argue, Mr. Poling did not plead facts suggestive of the Wardens' knowledge of any failure to provide medical care, or that their response amounted to deliberate indifference. *Id.* at 13.

Mr. Poling strongly disagrees. He argues that his claims surpass the *Twombly* and *Iqbal* threshold by alleging the Defendants knew that medical providers at multiple correctional facilities in Maryland repeatedly denied him necessary medical care, which amounts to widespread abuse, and nonetheless, failed to act to remove the effect of their policy, which amounts to deliberate indifference. Compl. ¶ 80; Pl.'s Resp. 3. As to supervisory knowledge, Mr. Poling argues that the complaint alleges that Defendants had the requisite knowledge to be liable. They knew prisoners would be denied necessary medical treatment due to their policy; and that Defendant Dr. Baucom had "general communications with Corizon providers regarding Mr. Poling." Pl.'s Resp. 4; Ex. 6 to Defs' Mot., Dr. Baucom Decl. 2, ECF No. 163-7. Further bolstering the allegation that

8

Defendants' possessed the requisite knowledge, according to Mr. Poling, is their compliance with the Court's order that prohibited the discontinuation of Lyrica. Pl.'s Resp. 4; *see* Compl. ¶ 62. Importantly, the operative complaint alleges that each of the State Defendants knew a policy regarding administration of medications would cause prisoners such as Mr. Poling to be denied necessary medical treatment. Compl., ¶ 80.

It also is clear, according to Mr. Poling, that the Defendants possessed the requisite knowledge under the *Shaw* framework due in part to their claims that they are powerless to act to override Wexford and Corizon's policy regarding prescribing pain medication or otherwise influence the course of Mr. Poling's medical treatment. Pl.'s Resp. 5; Ex. 4 to Defs.' Mot. Mem ¶ 2; Ex. 5 to Defs.' Mot. Mem ¶ 2; Ex. 6 to Defs.' Mot. Mem ¶ 2. Bolstering this assertion, Mr. Poling cites to relevant a Maryland statute, which requires that Wardens (such as the Warden Defendants) "supervise the government, discipline, and policy of [a] correctional facility." Md. Code Ann., Corr. Servs. § 3-211(b)(1) (2013).[6] This statute, Mr. Poling argues, allows a reviewing court at the motion to dismiss stage to at least infer that the Defendant Wardens had the requisite knowledge of the policy prohibiting Lyrica and Tramadol, thus satisfying the first and most contested element of Mr. Poling's *Shaw* claim.

To rebut Defendants' assertion that the Mr. Poling's claim is conclusory, he reiterates the allegations in the complaint that the "State Defendants have developed and/or implemented a policy depriving Plaintiff of required medical care, rendering them a cause of Plaintiff's

---

[6] Mr. Poling cites the 2013 edition of the Maryland Code; the applicable statutory language is unchanged in the current 2019 code. In resolving a motion to dismiss, I may take judicial notice of the content of statutes, and do so here. Fed. R. Evid. 201; *see also Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011); *Jones v. Penn Nat. Ins. Co.*, 835 F. Supp. 2d 89, 95 (W.D.N.C. 2011) (finding state statute was a matter of public record and taking judicial notice of the statute's content).

constitutional injury." Pl.'s Resp. 5; *see also* Compl. ¶ 72. Specifically, according to Mr. Poling, Dr. Baucom developed and issued a binding policy as to Maryland correctional facilities that prohibited administration of certain medications to prisoners. Compl. ¶ 56; Pl.'s Resp. 5. The complaint cites an example of this policy's effect: when Mr. Poling met with Dr. Nimley, Dr. Nimley refused to renew Mr. Poling's medications—even though his previous doctor, Dr. Raab, authorized the medications—because the State and its contract healthcare provider implemented a policy barring certain medications. Compl. ¶ 63.

At the motion to dismiss stage, I am required to accept as true the well pleaded factual allegations in the complaint and draw all reasonable inferences in favor of Mr. Poling. *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). If the complaint contains sufficient facts to state a claim that I find "plausible on its face," then the motion to dismiss must be denied. *Id.* (quoting *E.I. du Pont de Nemours & Co., v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011)). On each element of the *Shaw* standard, I find that Mr. Poling's complaint adequately pleads a cause of action sufficient to survive a Rule 12(b)(6) motion.

First, as to supervisory knowledge that a subordinate's conduct created a pervasive and unreasonable risk, the record supports an inference that Dr. Baucom knew prison medical providers were not prescribing Mr. Poling with effective medications to treat his debilitating pain. Mr. Poling alleges that Dr. Baucom communicated with the contract medical providers and that various correctional health care professionals alluded to a policy, ostensibly established by Dr. Baucom, that prohibited them from prescribing Lyrica and Tramadol. As to the Warden defendants, Mr. Poling also has adequately pleaded their knowledge of pervasive and unreasonable risk. Not only did Mr. Poling file multiple sick call slips related to his pain management treatment, e.g. Compl. ¶ 74, but State Prison Wardens in Maryland are statutorily responsible for policies

implemented in the facilities they supervise. Further, Defendant Bishop concedes that he responded to (at least) one of Mr. Poling's complaints regarding a delay in treatment. Defs.' Mot. Mem. 10.

In *Shaw*, the plaintiff's claim prevailed where the supervisor in that case, a state police Sergeant, knew that a subordinate officer used unreasonable force against arrestees on three occasions. *Shaw*, 13 F.3d at 800. Additionally, the Fourth Circuit noted the supervisor's conduct—responding with apparent amusement when confronted with the officer's problematic behavior—favored a finding of deliberate indifference. In Mr. Poling's case, there are not allegations of individual reactions to Mr. Poling's suffering like in *Shaw*, but the complaint alleges that the Defendants were repeatedly notified that Mr. Poling was not receiving the medications he needed, yet failed to respond. Pl.'s Resp. 4 (citing status reports on the docket, e.g, Nov. 5, 2018 Status Report, ECF No. 48 ("Defendants do not dispute that Plaintiff has not received Lyrica since October 19."[7])). At this stage, that is enough to survive a motion to dismiss as to the first element.

Second, as to the inadequacy of the response, I find that the response (or lack thereof) to Mr. Poling's medical situation sufficiently alleges deliberate indifference. Here, a contrast between prison and non-prison medical providers makes the inadequacy of the prison providers' response abundantly clear. When Mr. Poling was treated at the University of Maryland, doctors there prescribed and administered Tramadol and Lyrica. Compl. ¶ 75. It may reasonably be inferred that they did so because those medications were effective for treating his severe pain. But before and after being treated at the University of Maryland, doctors associated with prison

---

[7] The status report goes on the explain that the prescription had not been updated at the time because Mr. Poling refused a trip to Bon Secours Hospital in Baltimore for clinical input as to his medications. Mr. Poling declined the trip because prior trips were, in his view, "arduous, cruel, and futile."

11

medical facilities failed to follow this same course of treatment, despite having actual knowledge that Tramadol and Lyrica did work, but the alternative pain medications they prescribed did not. Accordingly, the supervisory response to the knowledge that Mr. Poling could be treated effectively with certain medications, and the choice not to provide those medications, is sufficient at the pleading state to demonstrate an inadequate response to Mr. Poling's medical condition.

Third, the complaint sufficiently alleges a causal link between the Defendants' conduct, and the injury to Mr. Poling. Due to the policy, Mr. Poling endured needless pain and suffering. The Defendants do not argue there is an insufficient causal link.

Because I find Mr. Poling has sufficiently alleged a cause of action as to each element of *Shaw*, I find the motion to dismiss must be denied.

### Qualified Immunity

Qualified immunity provides government officials with a shield from liability for civil damages so long as the conduct at issue was a discretionary function, and insofar as the conduct did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hicks v. Ferreyra*, 396 F. Supp. 3d 564, 574 (D. Md. 2019) (quoting *Wilson v. Layne*, 526 U.S. 603, 609 (1999)) *aff'd*, 965 F.3d 302 (4th Cir. 2020). Qualified immunity is therefore available to officers or agents who "act in objectively reasonable reliance on existing law." *Id.* (quoting *Queen v. Prince George's Cnty.*, 188 F. Supp. 3d 535, 541 (D. Md. 2016)).

Defendants argue they are entitled to qualified immunity because they did not violate any of Mr. Poling's clearly established constitutional rights. Defs.' Mot. Mem. 13. According to Defendants, any violation here was not based on sufficiently established law for Mr. Poling to carry his burden to rebut qualified immunity. Defs.' Mot. Mem. 14 (citing *Bryant v. Muth*, 994 F.2d 1082, 1086 (4th Cir. 1993). To substantiate this argument, Defendants state the operative

complaint lacks allegations that Mr. Poling was prohibited from receiving effective medical care and that the Defendant Wardens and Defendant Dr. Baucom lacked notice as to Mr. Poling's medical concerns. *Id.* at 15.

Deciding this issue now, without the full benefit of discovery and an expanded universe of information upon which to base a decision, would be premature. The Court requires more than documents integral to the pleadings to decide whether the underlying conduct here was sufficient to constitute a violation of Mr. Poling's constitutional rights. While it appears that the allegations show that the Defendants violated their duty to provide Mr. Poling with reasonable medical care, a right that is longstanding in the Fourth Circuit, *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977), making a finding on qualified immunity in this case is too fact-dependent to be resolved prior to the completion of discovery. *See Willis v. Blevins*, 966 F. Supp. 2d 646, 652 (E.D.V.A. 2013) ("[Q]ualified immunity is peculiarly well-suited for resolution at the summary judgment stage.) (citing *Willingham v. Crooke,* 412 F.3d 553, 558–59 (4th Cir. 2005)). Accordingly, the Defendants' motion to dismiss as to qualified immunity is denied without prejudice.

**Exhaustion**

In *Ross v. Blake*, the Supreme Court reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" 136 S. Ct. 1850, 1855 (2016). The Fourth Circuit addressed the meaning of "available" remedies in *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008), stating:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell,* 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo,* 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his

available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

An administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" *Ross,* 136 S. Ct. at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 735 (2001)). Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit. *See Chase v. Peay,* 286 F. Supp. 2d 523, 529–30 (D. Md. 2003).

The Supreme Court has outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." *Ross*, 136 S. Ct. at 1859. These are: (1) when the remedy operates as a "simple dead end-with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the administrative scheme is so "opaque" as to be "practically speaking, incapable of use"; and (3) when prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60.

Defendants argue Mr. Poling has not properly exhausted his administrative remedies because, while he filed for administrative remedies ("ARP"), he did not appeal the adverse ARP decisions, nor did he seek redress from the Commissioner of Correction. Def. Mot. Mem. 16–18. This, in Defendants' view, warrants dismissal under 42 U.S.C. § 1997e(a) for failing to comply with the Maryland statutory administrative remedies set forth at *Md. Ann. Code., Corr. Servs*. § 10-201 *et seq*. (2019) and *Md. Cts. & Jud. Proc. Code Ann*., § 5-1001 *et seq*. (2019)  Def. Mot. Mem. 16, 18.

Mr. Poling argues that further pursuit of administrative remedies in this case would be futile, and therefore that he need not have exhausted his prospects for an administrative remedy to proceed in federal court. The administrative remedies here were a dead end, according to Mr. Poling, because the Wardens refused to intervene. Pl.'s Resp. 12; Ex. 4 and 5 to Defs.' Mot. Mem.

I agree with Mr. Poling. Based on the information available for the Court's review, and viewed in the light most favorable to the Plaintiff, I find that the administrative remedies available to Mr. Poling were unavailable under the *Ross* framework. The Complaint notes several instances of Mr. Poling requesting the medication he needed to treat his severe pain, but it appears that prison officials were consistently unwilling to provide him with that relief. As stated in the declarations of Wardens Bishop and Dovey, the wardens claimed that they were unable to intervene in the provision of medical care to inmates such as Mr. Poling, and the Defendants do not offer any argument in reply to rebut Mr. Poling's assertion that the administrative remedy infrastructure made unavailable any resolution. The Court in *Ross* noted that unavailability was present when officers were consistently unable or unwilling to provide relief to an aggrieved inmate. *Ross*, 136 S. Ct. at 1859. That is precisely the situation Mr. Poling encountered; it is far from clear that appealing adverse ARP decisions would result in any meaningful remedy.

## Conclusion

For the reasons stated, the Defendants' motion to dismiss is denied, and I will issue an order to schedule further proceedings. A separate order follows.


DATED this 11th day of January 2021.

BY THE COURT:

/S/
Paul W. Grimm
United States District Judge